Yeah, except for a few cases that I wanted to add here to support my arguments in my briefs. I'm just going to submit on the briefs and if there's any questions afterwards or something else I'll use that 10 minutes later. So it's my case that summary judgment should never have been granted on these facts. Plaintiffs brought two causes of action. On the 727 claim alleging false of the complaint did not even allege the facts the court relied on to grant summary judgment relief on the claim. The plaintiffs knew this, so they filed a motion to amend their complaint before the court's ruling on the summary judgment. The judge denied their motion to amend the complaint as moot and granted their motion for summary judgment. Question Mr. Hamm, was that argument made before the bankruptcy court? I read over the transcript, I don't remember it. I don't remember your honor. Okay, if it wasn't made in front of the bankruptcy court, we're going to have a hard time considering it here. Okay. I raised it regardless because I think on matters of constitutional law such as due process I would ask the panel to consider it. Got your due process didn't you? I mean you had your hearing. I had a hearing on the motion for summary judgment, yes your honor. And you had full notice, you opposed it, you argued it. I argued it, yes your honor. On summary judgments, the bankruptcy court that I found, I made false oasts on property interests which did not exist. Issues of property interests are governed by state law. This panel has stated, Ninth Circuit law is clear that when state law recognizes no such vested right, bankruptcy law cannot find a property interest to exist but only a mere expectancy. And that's N. Ray Jones. California law states, an expectancy is not deemed to be an interest of any kind. That's in the civil code. That's section 700. And case law reinforces that in a case such as N. Ray, marriage of Brown. The site is 15 Cal D 838, that was 1976. There was no perfected contract and therefore no property interest. What do you understand the contract to be? The contract is the referral registration agreement. Wasn't that signed pre-petition? By who? It was signed by me, it was signed by the buyers, but neither of those are the party to be charged. When did the developer sign it? Well that's not on the record your honor, but the developer didn't sign it until close to close of escrow which is June, middle of June 2018. And again, the judge put considerable emphasis on the email chain and their representative saying that her signature would work. Right, and her signature does not work because it contradicts the terms of the agreement. Now you're getting into a legal argument though. Well, I am. Are you arguing that you understood that detail of law? And you made the conscious decision when you filed your schedules that because she did not have authority, despite that email chain, you understood that there was no property of the estate? Absolutely your honor, and not only that, I'm presumed to know that because as a real estate broker, I knew I need an acceptance signature from the developer. Mr. Hamm, just to be clear, did you make that argument at the bankruptcy court too that as a real estate broker you needed to know that? Yes I did your honor. Okay, I don't know that I filed it, I'll go look again, okay? It's throughout my declaration several times, and also it is in the memorandums of points and authority. I wish I would have hit that home a little bit harder with big bold letters, but it is replete in my papers your honor. I'm not saying it's convincing, but I didn't even think it was there frankly. Oh well, yes, so in my argument in the memorandum of points and authorities, and in my declaration, I raised the issue, and I also raised the issue before the judge, so in the transcripts. So there was no perfected contract. California law presumes that I know as a real estate broker that without a perfected contract I don't have a property interest. I asserted those facts, and you know this is still on top of the issue that these specific facts came as a surprise to me. It wasn't in the complaint. I know your honor said it was in the motion for summary judgment, but it wasn't in the complaint. That has no relevance. I mean, did you respond to that aspect of it? I don't recall that being part of your opposition. Well, it is a part of my opposition because in my papers, I said the court needs to continue this matter, and that this was an argument that I made so that I have the opportunity to discover when that contract was actually signed, and I wanted to rewind to a point that your honors have made regarding the email chain. It should be noted that the record supports me asking for a signed agreement, and that's because of that very same concern. The record supports me trying to get a signature from the developer. Now the email chain is misconstrued, misinterpreted. If you read what the sales agent said and the court misconstrued this entirely, she is laying out the process. So first she's saying, I think she said, I don't have it right in front of me, but she says first my signature on there will do. But what she means is it will do for now because we're in this process. Later in the same paragraph of the email, she's saying this needs to go to corporate. It's there. It says in the email chain. If we are relying on an email chain, which is extrinsic oral argument here, that it's written evidence that's uncontradicted, it's you're not, you're not, you're not contradicting the email that it didn't go. Doesn't say what it says. Well, what, what needs to be the contradiction is to the terms of the agreement, your honor, the agreement said this is an integrated agreement that that controls. And that's the point I'm trying to make here is, and this is back to California state law as agents and real estate brokers. We are trained by attorneys, by our association to know that there has to be a perfected written agreement. There's a fundamental point here though, Mr. Ham, that the only reason you got paid post petition was for your actions pre petition. Okay. So do my actions create an entitlement? Yes, probably. Yes. I, I disagree with that, your honor, and I understand that, but, but we're, and we don't need to get, get into that, but I think you're just wrong on that. There's case law on it. Your honor. I'm aware. Can I, can I raise the cases just briefly? You know, I think it's a side point. I mean, I understand, you know, I've read your brief and I understand. I think I don't want to divert you too far. I don't think that's the major problems in your, in your appeal. I think you probably should go on to why the judge erred in granting the summary judgment, particularly as to the fraudulent intent as the 727 and the subjective intent for willfulness under 523. And I'll, I'll say that you are within the time you wanted to reserve for rebuttal, but you may want to go ahead and address the points that we're concerned about. Go ahead, please. I want to just state to the court, I knew that I had an expectancy in receiving a payment. The record shows that. I don't deny that. I knew that I had an expectancy, but an expectancy is not a property interest. And even if we're going to go into case law or whatever, where the, the cooperating broker is a procuring cause of the sale, his recovery from the listing broker is still limited to the terms of the cooperation agreement. And I just like to say that's Bucklew v. Johnson, 1975, 14 Cal.3D815821. And then there's Colbaugh v. Hartline. That's 29 Cal. App. 41516. That was 1994. Let me ask a slightly different question. You're putting yourself in the place of a trustee and a judge by saying, here's the right legal answer. So I don't think I have to disclose this. Why didn't you just say, I have an expectancy and let everybody decide what it was? Because the petition doesn't call for that. The bankruptcy code calls for full and honest disclosure of property interest, your honor. Yes. And you think that you're entitled to make the decision that this, I think this is an expectancy and it's nothing else. That tends to show intention, which is the one thing I think you've got an argument about here. Well, I've, and I'm taking this strong position, your honor, because I've researched and I'm trying to find anywhere where an expectancy is required. I looked at the form again to look at the language. Well then take it to the next level. I apologize for interrupting, but it's clear that afterwards you got paid and you got paid for pre-petition work. So that it was rooted pre-petition, if not all exceedingly, most of that was property of the state. Why was it never voluntarily disclosed post petition? Your honor that opens up a Pandora's box here because how much work do I do that I did pre-petition? I'm doing all kinds of work under an expectancy or I believe all the commission cases and tax refund cases established that conclusively. They do establish that conclusively because there is a contract. So the question isn't whether there was work. I don't deny that there was work. It's what are you working for? Because don't, isn't it true that I, and people like me work for, that we prospect for business all the time and there's no contract. There's no entitlement. There's no interest. I was doing work at the same time for probably 15 or 20 other potential clients, but I didn't have a contract for them either. But the petition does not ask for my expectancies or the prospecting that I do. I did have an expectancy, but I still didn't have a referral registration signed by me and signed by my buyers, but not by the party to whom I would be enforcing that agreement. And didn't that have been, didn't you have a possible quantum Meroweth claim? There is no quantum Meroweth claim as to this is in case law and I don't have a site for you now, but that would refer to an, that would apply to an attorney, but not to a real estate agent because with an attorney, for example, there could be some kind of oral argument that the services were, were to be provided at a certain rate and the services were provided and that's all documented and you can't get out of that because you're relying on this oral argument here. We state law precludes oral arguments there or services that are done without the contract. Did Ms. Rohrbach sign that, that referral registration pre-petition? No, there's a, the, the signature was by Daniel Fina, who is the officer. No, the one above it, the developer sales representative, isn't that Ms. Rohrbach? No, I think that's Rorin, it's hard to pronounce her name. Amy Rorin, she only signed the line that says acknowledgement only. And that to me is a term of the contract. She is only acknowledging the existence in their office of that form. But that's why the email is so important. That would be, that's where I think the court went wrong because that is not only extrinsic evidence, it doesn't support, it doesn't even support the terms of the agreement. It conflicts with the terms of the agreement. The agreement itself states in clear language that this document only sets forth the terms of the agreement. It is an integrated agreement. But you understand the problem here is that obviously Williams never contested this. You are arguing against your own self-interest here. That, that's, that's a large part of the problem, right? I don't understand. You are, you are arguing and making a very technical point that I do not have to disclose $20,000 that I received post petition because the Mr. Fina may not have signed it post pre-petition. Though you have a resident, a representative of that entity saying I have authority. My signature will work. She's not saying that I have authority. She's saying my signature will work. What does that mean? Yeah. What else would that mean? Yeah. It means that we have, we have the contract in our office and it still has to go to corporate. The email says that much and it still conflicts. It still conflicts with the terms of the agreement because the agreement itself says that the acceptance has to be by a Williams Holmes manager. Where is the manifestation of that, that pre-petition? I mean, where, where is it? This all sounds like a very hyper-technical argument presented on summary judgment after the fact. I don't understand the question, your honor. Where, where, where is the, the record that shows your concern and, and hesitation acknowledgement that you're doing all of this work and sending the, the, you know, the emails and in the loop, even though you have no contract or no right to payment at that time. Again, real estate agents and brokers do all this, do this all the time. However, let me add the declaration of Michael Easter shows. And my declaration also show that we were friends. I told him that regardless of compensation, I'm going to help you guys get this house. It's in the record. It's, it's there. But you're expecting payment. You're sending emails saying, I want to make sure payment comes to me directly. And why wouldn't I? Well, on, well, because you don't have a contract. I have the contract. I was working in anticipation of the contract. One of my problems is that you're, you're saying all this is inconsistent with the contract. There's no contract until the contract is signed. But until the contract is signed is there's no contract. So how could, how can you say it's inconsistent with the contract when there wasn't a contract yet? See what I'm saying? No, I don't. Um, what you're saying that at the date of bankruptcy, I had no interest because the contract said I had no interest. I'm saying the contract didn't exist. That's all. There was no, um, there was no perfected agreement. California state law requires a perfected agreement subscribed by the party to be charged. That is Williams homes. I knew I didn't have that, but why would I stop working for that expected expectancy? It's, it's in my nature to want to get paid. I continued working for it. Then the question is, did the court, um, uh, find property properly find as I requested, uh, a, a property interest that could be included in a bankruptcy estate. I was not an expert on bankruptcy law at the time, but I did know real estate contracts. I am presuming that I understand. And we we've taken you all the way through your 15 minutes and pass, but I think that's actually probably more valuable than what you would offer in rebuttals. So I think that's a good use of time. Uh, Mr. Belton, please go ahead. Good morning. Your honors. May it please the court. Jeff Belton on behalf of the appellees. This panel should affirm the decision of the trial court granting the motion for summary judgment. The trial court correctly found that there were no genuine issues of material fact regarding the faults of this claim. Let me stop you right out of the box here and make the argument that I was kind of expecting Mr. Ham to make that what the bankruptcy court did here was really not a proper inquiry on summary judgment on the theory that the word credibility is used, um, at various times within her decision and credibility certainly can mean weighing evidence or, or weighing the likely truthfulness of a witness. So can you address for me why the court in your mind didn't stray from the normal summary judgment protocols? Of course, your honor. If the panelists take a look at the transcript, so it's clear that the reason the trial court ruled the way that it did, was it because it determined that the debtor was attempting to manufacture factual disputes in an effort to avoid summary judgment. And the ninth circuit has held an FTC versus publishers clearing house at one Oh four F serving affidavits that lack detailed facts are going to be insufficient to create an issue of material. What is lacking detailed fact or sufficient information to say, I believe I was going to win the lawsuit. Well, so your honor, let me address. You're right. I'm sorry. Judge Lafferty. Could you repeat the question? Judge Baker, you're talking about section five 23 there. I would start. I am. You want to stay on seven 27? Well, just for a minute. Thank you. Yeah. Okay. So, so judge Lafferty, let me, let me address your question about why the judge made a comment about the fact that the debtors arguments weren't credible. He made the exact same arguments before the trial court that he just made here today that there wasn't an agreement and he didn't know if he'd ever get paid. He didn't believe he was going to get paid. And then he conceded during oral argument that he thought he expected that he would get paid. And in particular, the trial court judge focused on the email exchange from Amy Rowan and the email exchange from Amy Rowan directly contradicted the argument that debtor had made. And that's part of the reason why the court said you are not credible. But isn't that weighing evidence, weighing what he's saying in his declaration and in the oral argument against the email? It's not your honor, because under ninth circuit authority, you can't manufacture issued to defeat summary judgment with your own self-serving affidavit when that's directly contradicted by his own exhibits. Here's what it is. But, you know, it's it's I think that's not quite what the ninth circuit law is. It's when you contradict your own prior testimony, that can be enough. Well, that that is not enough to stave off for summary judgment. But if there's other exhibits authored by other people, partly, don't you have to weigh evidence to consider those against the debtor's current declaration? One of the cases that I pointed out, your honor, was the Scott case and the Scott case from the Supreme Court says that if two sides are telling competing and competing versions of events on summary judgment, but one one person's version is completely contradicted by the record, it's not reasonable for the court to assume the truth of that position. And that's what we think. That's what the judge did, because she does use the word credibility, which suggests that she's weighing something. I hear what I hear what you're saying. There is a standard out there that says, look, if you've got, frankly, irrefuted evidence that leads in one direction to a legal conclusion, you don't avoid summary judgment by saying, well, I don't hold with that. In the words of Chuck Yeager. Right. I mean, you've got to have something. But the problem is that didn't the judge made a little bit harder here, I think, because she does use the word credibility as if she's treating Mr. Ham as a witness, you know, as opposed to a declarant who's got a declaration in there that's trying to contest some of these points. So how do we get over that? Your Honor, I think that's a fair point. And I'll concede that the judge's language may not have been perfect. And that's why I appointed this court to the case that the Jones case that came out of the Fifth Circuit. One of the issues that's that's in front of the court here is this is not a lawyer who is making bad arguments on behalf of a client. Mr. Ham, the debtor, was making these arguments on his own behalf. And the court didn't find those arguments believable. The court wasn't persuaded by them. So and I think that's part of the reason why the court made the comments that it did. But that sounds like weighing, too, because as the judge indicated, by the fact of Mr. Ham getting to the lectern, making his arguments and referring to factual matters, there's a danger there of accepting that argument as evidence at argument. Your Honor, here's here's another key point. When the debtor prepared his record for this appeal, he didn't provide any of the exhibits that were attached to his own declaration. And the reason he didn't do that is because I pointed out in the MSJ hearing that many of those exhibits directly contradicted what he said in his declaration. So his strategic omission of those exhibits establishes one of the points that I made during the summary judgment hearing is you can't manufacture an issue of fact through a declaration when the exhibits you've attached to that declaration directly contradict what you said. Here's one more point on this. So the debtor has just made the argument and made it at the hearing that there wasn't an agreement. He is the one who provided the declaration from his own client, Michael Easter, which was before the court. And Easter's declaration absolutely says that there was an agreement. But Easter is not the developer. That's true, Your Honor. And that's the problem here. I think I'm concerned that there's a two step process here. One, there was no agreement. And those emails, Mr. Easter's comments, all established for purposes of summary judgment that there was an agreement. But that's not the fundamental issue here. The issue is whether he fraudulently failed to disclose that. That's the next step. And that's the next step the judge took by saying those emails, your contradictory statements, all that means you were dishonest and I find fraudulent intent. Isn't that the problem? No, Your Honor. And the reason why and then Judge Fraker, let me go back to a point that you raised when you were asking a question of the debtor. The question here is what the debtor knew at the time. And Judge Fraker, you correctly pointed out that the question is whether or not the debtor's interest was sufficiently rooted in the prepetition past. That is a fairly sophisticated legal question on which there are numerous cases explaining that which take a lot of reading to understand. That's true, Your Honor. But I think that's also why the court focused in on the email exchange because that's an independent, verifiable piece of evidence. The court focused on the email exchange because debtor made the exact same arguments during the hearing that he made in the email. I don't have the developer's signature. What's going on? And I want to point specifically to the response he got from Amy Rowan. She said, and I quote, my signature on there will work. She's acting with ostensible authority. She's an agent for Williams Homes and she's telling him my signature is good enough. And that's not where it ends. She goes on to say, and I quote, when the home closes, the ham team will receive 4%. And that is exactly what happened. On the basis of that email, he knew 40 days before he filed bankruptcy that when the escrow closed, he was going to get paid. Your Honor, and as I want to return to the point I was making about it being rooted in the prepetition past. So as the Supreme Court held in Siegel versus Rochelle, the question is, when was it rooted? Detter is the one who signed the referral agreement, which ultimately gave rise to the commission that he received. He signed that and his client signed it 40 days before he filed bankruptcy. In addition to the fact that he's setting aside the issue with the agreement, there was also a lot of evidence before the court regarding all of the prepetition work that he did to ultimately generate that commission. The record before the trial court showed that he had signed a referral agreement with Williams Homes even earlier back in March. But this all goes to my point that this establishes, I believe you are correct, that this was clearly property estate that should have been disclosed. Got that. But then you have to show the fraudulent intent. And on summary judgment, how is that proper to say, based upon this, I find that he did not have, you know, essentially he was dishonest, for lack of a better term, that he had the fraudulent intent to secret this property. That seems to be the jump, not the legality. Of course, Your Honor. And I would direct this court's attention to the BAP case, Cahill. And in the Cahill case, the BAP found that a reckless indifference to the truth is equivalent to fraud or can support a denial of discharge under 727A4A. But that's where... Go ahead, Judge Ferris. I was going to say, where is there evidence of indifference to the truth? I mean, it sounds from what the debtor is saying now that he thought about this pretty carefully. I mean, I think he was wrong, but it sounds like he thought it through. A couple of responses to that, Judge Ferris. First, and as I pointed out to the trial court in my reply, debtor's claim that he wasn't acting with fraudulent intent was totally disproven by all of the independent discovery. Debtor served a bunch of requests for admission on him, and he falsely denied those. Is that post-petition? Again, you're weighing that. You're making a jump from, he stated stuff that was not correct, therefore he's dishonest, therefore he must have fraudulent intent. How do you establish as, you know, undisputed at the time there was no... that there was fraudulent intent? Well, Your Honor, I think, here's also a response to that. The Ninth Circuit and the BAPT have repeatedly held that there is an implied duty to amend. So instead of... But again, your time is running short, so I'm going to interrupt, and I apologize for not letting you have a running start here. But if you accept that construing all inferences in Mr. Ham's favor, he did have a belief that this was not property of the estate, then there's no reason to report. Your Honor, in response to the issue about the court construing all inferences in favor of the debtor, that's only true to the extent that such inferences are reasonable. And the problem with that is he was asking the court to make inferences in his favor that were inconsistent with Ninth Circuit law and some of his own exhibits. No, but Ninth Circuit law goes to legality. Again, that goes to whether it is property of the estate. He said, you know, generally construed, it's, I got it wrong. I thought about it. I just got it wrong. But one last point in response to that, Your Honor, and then I'd like to address the second cause of action. I also made the argument to the trial court that his ignorance of the law shouldn't be a defense to summary judgment. He was representing himself in the case, and he signed all of the recognitions that he was going to be aware of all of the bankruptcy requirements to disclose what is and is not property of the estate. How is that fair? Your Honor, as I mentioned, reckless indifference to the truth is sufficient under controlling authority to establish a fraudulent intent. And if Your Honor's would allow me, I'd like to move quickly to the second cause of action. So in addition to the arguments that the creditors made regarding 523 regarding the false oaths, the court also properly accepted the debt from discharge under 523-A-6. Now, the ninth, I pointed out to the bankruptcy court that the BAP had approved the decision in the N. Ray Healy case. And in Ray Healy, the court found that a debt could be accepted from discharge for an anti-slap judgment if it was based on willful and malicious misconduct. And I analyzed in both my motion and in the brief how all of the factors that the BAP looked at in the N. Ray Healy case were present here. Second, I pointed out that the Ninth Circuit in Jersey held that the requirement is going to be met if the debtor was substantially certain that injury was going to occur as a result of his conduct. And he argued, and he's going to argue, I'm sure, again, that he thought he could win his lawsuit or that he didn't intend to harm the creditors. But such an admission is not required under Ninth Circuit authority. The Ventura County Superior Court, when it granted the creditors anti-slap motion, specifically found that his lawsuit should never have been filed. It was based on a bitter and utterly unnecessary family court litigation that had been going on for years. So the fact that he is going to argue, well, I thought I could win and I had no bad intent, that can't be used to contradict the express findings of the trial. Why not? He's not contradicting that it was frivolous. He's contradicting his intent. Your Honor, I would return to the point I made earlier about the Scott case. And in that case, as I said, that what that case holds is that if the parties on summary judgment are telling two different stories, but one of which is blatantly contradicted by the record, the court shouldn't, the court is not required to accept the truth of the party's motion opposing. How contradicted his intent that he thought he was going to win? All of the rulings and all of the filings from all of the other courts. But that's after he filed it. Your Honor, the only point that I can make in response to this is that the court properly considered the entirety of the record before it, when it ruled on the summary judgment. Let me ask you a question about the Ventura Superior Court. When it said, look, this is all the product of a long and bitter divorce. I think what Judge Fraker is saying is that may be true. It doesn't mean he doesn't think he was right. But if the Ventura County Superior Court went on to say no one could have thought that because you've lost this 120,000 times in front of other courts, that would be one thing. I don't know that that's what they said. Is that is that you think a fair reading of what the Ventura County Superior Court said? Judge Lafferty, it's true that the Superior Court judge didn't say that. And I would direct this court's attention back to the in Ray Healy case. And in Ray Healy, the court that a court didn't specifically say in the end about didn't didn't consider it necessary that the court found it was frivolous or that he knew he was going to lose. In Ray Healy said that the debtor likely knew the suit lacked merit. And that was sufficient for the debt to be accepted from discharge. OK. All right. Thank you very much. You've exhausted your time and Mr. Ham's exhausted his time. The matter is submitted. I'm going to say something now. I'm speaking only for myself. And I've never done this from the bench in the back before. This is a challenging case. You should really talk to each other about getting this resolved. OK. All right. Thank you very much. Courts in recess.
judges: Farris, Lafferty, Spraker